OPINION *Page 2 
{¶ 1} Appellant, Johnathan Grewell, appeals from the October 10, 2008, Judgment Entry of the Guernsey County Probate Court holding that the consent of appellee Robert Blausenhauer is necessary for the adoption of Madison Marie Blausenhauer.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Madison Marie Blausenhauer[1] (DOB 6/22/03) is the biological daughter of Heidi Grewell and appellee Robert Blausenhauer. The two have never been married. Heidi Grewell has been married to appellant Johnathan Grewell since September 24, 2005.
 {¶ 3} On March 18, 2008, appellant filed a petition to adopt Madison pursuant to R.C. 3107.05. Appellant, in his petition, alleged that appellee's consent to the adoption was not required because appellee had failed, without justifiable cause, to communicate with Madison for a period of at least one year immediately preceding the filing of the adoption petition or the placement of Madison in appellant's house.
 {¶ 4} A consent hearing was held on August 6, 2008. Prior to testimony, appellant's counsel argued that the evidence would show that appellee had no communication with Madison since January of 2007. The following testimony was then adduced at the hearing.
 {¶ 5} Heidi Grewell, Madison's mother, testified that Madison has resided with her since birth. Grewell testified that she was not living with appellee at the time of Madison's birth and that she has four other children with appellee. The four other children all are in appellee's custody. Grewell further testified that she was given *Page 3 
custody of Madison pursuant to a court order issued in October of 2006 and that, once a paternity test established in 2004 that appellee was Madison's father, appellee was ordered to pay child support.
 {¶ 6} According to Grewell, appellee did not start to visit with Madison until October of 2004 when Grewell moved in with appellee. The two lived together until March of 2005. Grewell testified that, after the two separated, appellee visited with Madison a couple of times, but that there was no set visitation schedule. Although she advised appellee of Madison's hospitalizations for asthma and bad allergies, appellee only came to visit Madison in the hospital once in the fall of 2006 for approximately five minutes. At the time, Madison was hospitalized for the flu. Grewell testified that Madison had had several surgeries and that appellee only showed up for one and that appellee did not attend Madison's first year graduation or any of her school plays or performances.
 {¶ 7} At the hearing, Grewell testified that the last communication that appellee had with Madison was on December 28, 2006 and that he did not see her after such time. The following is an excerpt from Grewell's testimony:
 {¶ 8} "Q. Was there any discussion between you and Robert in January of 07 about the visitations?
 {¶ 9} "A. Yes there was.
 {¶ 10} "Q. He asked if he could have Madison, and I asked him if we can do a couple hours here and there because she doesn't know him, and every time she goes she comes back crying or I called to check on her she was crying, so I asked if him if we can do a couple hours here and there so she can get used to him, and he said he aint *Page 4 
nobody's f-ing babysitter." Transcript at 14. According to Grewell, appellee never contacted her after such discussion to attempt to visit with Madison.
 {¶ 11} At the hearing, Grewell testified that appellee has never sent a birthday, Christmas or other type of card to Madison and never contacted her after December 28, 2006 to arrange for visitation. She further testified that when she met with appellee to pick up her other four children from him, Madison was not discussed. Grewell testified that after the adoption petition was filed, appellee contacted her once to ask why Grewell would not "let Madison go." Transcript at 18. According to Grewell, to the best of her knowledge, appellee had not seen Madison in over a year, had any phone contact with her or sent any cards to her.
 {¶ 12} Barbara Wharton, Heidi Grewell's grandmother, testified at the hearing that, several times prior to January of 2007, her daughter had called appellee about visiting Madison. She further testified that she had not seen appellee and Madison together since Grewell and appellee split up. When asked whether Grewell refused to allow appellee to visit with Madison, Ms. Wharton responded in the negative.
 {¶ 13} Jacqueline Grewell, appellant's mother, also testified at the hearing that she had not seen appellee with Madison since December of 2006 and that, to her knowledge, he had not communicated with Madison since the end of December of 2006.
 {¶ 14} At the consent hearing, Melissa Blausenhauer, appellee's wife, testified that she very seldom saw her stepdaughter since March 3, 2006 and that she did not recall seeing Madison in 2007. According to Melissa Blausenhauer, after December of *Page 5 
2006, Grewell did not allow appellee to see Madison. When asked if she knew the reason why, Melissa Blausenhauer responded as follows:
 {¶ 15} "The reason that I was either heard from Heidi was Bobby is not her dad. Bobby don't have time for Madison since Brook was born, and since we were together, and that she wouldn't let Madison come to the house because of me." Transcript at 46.
 {¶ 16} Melissa later testified that she and appellee saw Madison at a school play at the end of the 2006-2007 school year. The following testimony was adduced when Melissa Blausenhauer was asked whether anything occurred with Madison at the play:
 {¶ 17} "A. Heidi had held Madison up on her lap like this. Had her stand straight up and look towards Bobby through the crowd and we were standing in the back, and she had yelled out Bobby, Bobby so loud like you couldn't miss it. You knew who she was talking to. And then Bobby would smile and wave to her. Heidi had let Madison get down and get so close to Bobby thinking that they were going to hug, and came up so fast and grabbed her." Transcript at 48.
 {¶ 18} Melissa further testified that she and her husband sent birthday gifts, Easter gifts and other gifts to Madison but that, because Madison never received them, they just started saving the gifts and putting them into a closet.
 {¶ 19} Appellee testified that after October 30, 2006, he had visitation once a week for a couple of hours with Madison. Appellee further testified that, after January of 2007, Grewell offered him a couple of hours "here and there" with Madison and he told her that he was not Madison's babysitter and wanted to have her for a night. Transcript at 62. After January of 2007, appellee, during conversations with Grewell regarding Madison, asked Grewell when the next time was that he was going to get visitation with *Page 6 
her. Appellee testified that his requests for visitation were denied because Madison was sick or staying with someone.
 {¶ 20} When asked, appellee testified that the last time he physically saw Madison was the end of the 2007 school year at the school play. Appellee testified that he waved to Madison and said hello to her and that, when Madison got close to him, Grewell grabbed her away. He further testified that, during 2007, he was able to say "hi" and "bye" to Madison during exchanges of the other children from him to Grewell. According to appellee, Grewell stopped bringing Madison with her during the exchanges. Appellee testified that he did not send Madison cards or presents during 2007-2008 because Grewell threw them away. He testified that he kept cards and gifts at the house in a closet.
 {¶ 21} At the hearing, appellee testified that he was current in his child support. According to appellee, during a conversation with Grewell, she told him that it was not right that she did not pay anything to him for their other four children and that she was going to call the Child Support Enforcement Agency to see if there was something that they could sign so that appellee would not have to pay child support for Madison. Appellee testified as follows when asked whether he knew the last time when he asked Grewell for visitation with Madison:
 {¶ 22} "A. I would say I asked her three months.
 {¶ 23} "Q. Were your requests continuous?
 {¶ 24} "A. Yes.
 {¶ 25} "Q. And you and the mother have a lack of communication between the two of you? *Page 7 
 {¶ 26} "A. Correct.
 {¶ 27} "Q. And your testimony is that those conversation [sic] occurred during the pick ups and drops offs?
 {¶ 28} "A. Correct." Transcript at 65-66.
 {¶ 29} He further testified that he spoke with appellant during the end of 2006 regarding visitation and that appellant told him that he would talk to Grewell and see what he could do, "but he wasn't going to promise anything because [Grewell] was feisty . . ." Transcript at 67.
 {¶ 30} On cross-examination, appellee testified that he had filed a contempt motion against Grewell on March 12, 2008, and that, in his motion, he alleged that Grewell had not permitted Madison to visit with him for a period of approximately one year. He further testified on cross-examination that he had last seen Madison "eleven months from now" at an exchange. Transcript at 73.
 {¶ 31} Both parties filed post-hearing briefs. Pursuant to a Judgment Entry filed on October 10, 2008, the trial held that appellee's consent to the adoption was required because "[t]his Court cannot find that the father has failed to communicate with the child without justifiable cause." Appellant then filed a request for findings of fact and conclusions of law and both parties filed proposed findings of fact and conclusions of law. The trial court, in its Findings of Fact and Conclusions of Law that were filed on October 10, 2008, stated, in relevant part, as follows:
 {¶ 32} "2. The evidence shows that Mr. Blasenhauer [sic] did not have a complete abandonment of the current interest in the child as he repeated [sic] asked the *Page 8 
Mother when he could have visitation with the child. He has custody of Madison's four siblings of whom Heidi Grewell is the mother. . . .
 {¶ 33} "3. Evidence was presented that the Father tried to get parenting time with his child after December 28, 2006, but was denied by the Mother. Furthermore, the evidence as shown that at the school event at the end of the 2006-07 school year the child was permitted to come close to the Father, but then the Mother pulled the child back at the last moment. The Father did file a Motion for Contempt regarding his parenting time with Madison Blasenhauer [sic] in the Guernsey County Juvenile Court (which at the consent hearing the court took judicial notice of the case).
 {¶ 34} "4. Clearly Court's have proceeded cautiously when determining whether consent is needed for an adoption of a child. Even contact as minimal as sending a Christmas card has been determined to be contact. Allowing this adoption to proceed without the consent of Mr. Blasenhauer [sic] is not supported by the evidence in this matter or by ORC3107.07(A). Mr. Blasenhauer [sic] has custody of the other four children that he and Mrs. Grewell share. It does not seem logical that he would have custody of the four and then not even want to visit with Madison. Based on the evidence and testimony presented Mr. Grewell has not met his burden of proving, by clear and convincing evidence, that Mr. Blasenhauer [sic] has failed to communicate with the child during the requisite one year period and that there was no justifiable cause for the failure of communication."
 {¶ 35} Appellant now raises the following assignment of error on appeal:
 {¶ 36} "THE TRIAL COURT ERRED WHEN IT RULED THAT APPELLANT HAD NOT MET HIS BURDEN OF PROOF THAT THE NATURAL FATHER HAD FAILED TO *Page 9 
COMMUNICATE WITH THE CHILD DURING THE REQUISITE ONE YEAR PERIOD AND THAT THE FATHER TRIED TO GET PARENTING TIME WITH HIS CHILD AFTER DECEMBER 28, 2006 BUT WAS DENIED BY THE MOTHER."
 I {¶ 37} Appellant, in his sole assignment of error, argues that the trial court erred in holding that appellant had not met his burden of proving that appellee had failed to communicate with Madison during the requisite one year period. We disagree.
 {¶ 38} "The right of a natural parent to the care and custody of her children is one of the most fundamental in law. This fundamental liberty interest of natural parents in the care, custody and management of their children is not easily extinguished. Santosky v. Kramer (1982),455 U.S. 745, 753-754, 102 S.Ct. 1388, 71 L.Ed.2d 599. Adoption terminates those fundamental rights. R.C. 3107.15(A)(1). Accordingly, adoptions are generally not permissible absent the written consent of both parents. R.C. 3107.06." In re Adoption of Stephens, Montgomery App. No. 18956, 2001-Ohio-7027 at 2.
 {¶ 39} R.C. 3107.07(A) sets forth, in part, the requirements for a parent's consent to an adoption. R.C. 3107.07(A) states that a probate court may not grant a petition to adopt a minor child absent the consent of the child's parent. However, the statute further states that the consent of a parent is not required for adoption if the court finds that "the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition" R.C. 3107.07(A). *Page 10 
 {¶ 40} "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 481 N.E.2d 613, paragraph four of the syllabus. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 41} An appellate court will not disturb a trial court's decision on adoption unless it is against the manifest weight of the evidence.In re Adoption of Masa (1986), 23 Ohio St.3d 163, 492 N.E.2d 140. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610, 614 N.E.2d 742, 1993-Ohio-9.
 {¶ 42} Although the term "communicate" is not defined in R.C. Chapter 3107, it has been defined as "`to make known,' `to inform a person of, convey the knowledge or information of * * * to send information or messages[.]' "In re Adoption of Jordan (1991), 72 Ohio App.3d 638, 644,595 N.E.2d 963. *Page 11 
 {¶ 43} "Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." In re Adoption of Holcomb,18 Ohio St.3d 361, at paragraph three of syllabus. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence.Id. We are mindful that, in making the justifiable cause determination, the probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony. Holcomb, 18 Ohio St.3d at 367.
 {¶ 44} Asked to determine the legislature's intended meaning of the term "communicate" as used in R.C. § 3107.07(A), the Supreme Court inHolcomb held that: "Our reading of the statute indicates that the legislature intended to adopt an objective test for analyzing failure of communication * * *. The legislature purposely avoided the confusion which would necessarily arise from the subjective analysis and application of terms such as failure to communicate meaningfully,substantially, significantly, or regularly. Instead, the legislature opted for certainty. It is not our function to add to this clear legislative language. Rather, we are properly obliged to strictly construe this language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." Holcomb, supra 366. (Emphasis added.) As noted by the court in In re Adotiton of Cutright, Ross App. No. 03CA2696, 2003-Ohio-3795 "[The `failure to communicate' envisioned by *Page 12 
R.C. 3107.07(A) is tantamount `to a complete abandonment of current interest in the child.'" Id. at paragraph 17. Citing 2 Merrick-Rippner, Probate Law (2001), 725, 728.
 {¶ 45} The trial court, in the case sub judice, found that appellant "has not met his burden of proving, by clear and convincing evidence, that [appellee] has failed to communicate with the child during the requisite one year period and that there was no justifiable cause for the failure of communication." We cannot say that the trial court's decision is against the manifest weight of the evidence because there is competent, credible evidence supporting the same. There is no evidence that appellee has abandoned interest in Madison. See Outright, supra. There was testimony that appellee attempted to obtain visitation with Madison after December 28, 2006, but that Grewell denied his requests. At the hearing, appellee testified that he spoke with Grewell during every pick-up and drop off about visitation with Madison. Appellee testified that, after January of 2007, his requests for visitation were denied by Grewell on the basis that Madison was sick or staying with someone. Appellee further testified that, at a school play at the end of the 2007 school year, he saw Madison and waved to her but that, when Madison got close to him, Grewell grabbed her away. The following testimony was adduced when appellee was asked if there were other occasions he was able to say hello to Madison during 2007:
 {¶ 46} "A. Yeah at the beginning of the year, I didn't get any visits but during the exchanges [of the other children] she was in the vehicle with Heidi and you know I was allowed to say hi and bye. She just stopped bringing her. Probably wasn't even a couple. Might have been just a month. I [sic] wasn't long after that. It was just done." Transcript at 63. *Page 13 
 {¶ 47} Based on the foregoing, we find that the trial court did not err in holding that appellee's consent to the adoption was necessary.
 {¶ 48} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 49} Accordingly, the judgment of the Guernsey County Probate Court is affirmed.
Edwards, J., Gwin, P.J., and Wise, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court Probate Court is affirmed. Costs assessed to appellant.
[1] The name is also spelled "Blasenhauer" throughout the record. *Page 1